# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL OILWELL VARCO, L.P., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL CASE NO. 4:12-3120 |
| | § | |
| MUD KING PRODUCTS, INC., *et al.*, | § | |
| Defendants. | § | |

# MEMORANDUM AND ORDER

On April 5, 2013, Defendant' Mud King Products, Inc. ("Mud King") filed a voluntary petition in bankruptcy seeking protection under Chapter 11 of the Bankruptcy Code. Recognizing the imposition of the automatic stay, 11 U.S.C. § 362(a), as to debtor Mud King, the Court requested that all parties in this trade secret misappropriation case submit statements of their positions on whether this civil action should be stayed in its entirety pending the conclusion of Mud King's bankruptcy proceeding or should proceed against the remaining defendants.

Plaintiff National Oilwell Varco, L.P. ("NOV") contends that there is "no legal justification for staying the prosecution of NOV's claims" against the non-debtor Defendants. The remaining defendants seek extension of the automatic stay to cover them.

## I. BACKGROUND

Originally, NOV asserted claims based on allegations that Mud King President, Nigel Brassington, and Mud King Quality Control Manager, Freddy Rubiano, had paid an NOV employee cash to access, print, and deliver certain proprietary NOV engineering blueprints for oil field services equipment parts.[1]  In amended pleadings, NOV named numerous other defendants that it alleged were involved in the theft of NOV's drawings.[2]  NOV now sues several Mud King employees, including Nigel Brassington, a Mud King Director, Freddy Rubiano, Gary Clayton, Sean Cougot and Martin Rodriguez (who are referred to collectively as the "Individual Mud King Defendants").  Additionally, NOV asserts claims against Don Humiston, a former Mud King employee whose electronic devices contained numerous NOV blueprints and who apparently brought the matter to NOV's attention.

NOV also has asserted claims against entities involved in manufacturing parts from the stolen drawings, specifically, Oilman Group Co., Ltd., Wellhead Solutions, Inc., and Dezhou L & A Petroleum Machinery Co., Ltd. (collectively, the

---

[1]  This case originally was filed in state court.  Mud King timely removed this matter to this court.

[2]  *See* Third Amended Complaint and Application for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction ("Complaint") [Doc. # 70].

"Manufacturing Defendants"),[3] as well as against SMC, Inc. and Larry Murray (collectively, the "SMC Defendants"), who allegedly provided NOV's proprietary drawings to Mud King in exchange for payments.

NOV has obtained injunctive relief against each of these defendants prohibiting, *inter alia*, use of NOV's drawings. NOV states that its two "primary goals" of this litigation are "to discover *from where* the defendants obtained NOV's proprietary information" and "to discover *to whom* the defendants have disseminated NOV's proprietary information." NOV obtained nearly twenty terabytes of data from Mud King's computers, through an authorized imaging process.

Mud King filed Chapter 11 bankruptcy on April 5, 2013,[4] the day before the deposition of Mud King's corporate representative was scheduled to take place.[5] Mud King in its bankruptcy petition lists assets of $10 to $50 million and liabilities of $1

---

[3] The Manufacturing Defendants have not appeared in this action. Dezhou and Oilman are being served under the Hague Convention, and returns of service are not expected for several months. Wellhead, located in Houston, was served but has not appeared or answered the complaint.

[4] Brassington, a member of the Mud King Board of Directors, voted in favor of this course.

[5] Plaintiff has sought this deposition for some time. NOV contends that Mud King has engaged in "incessant delay tactics," including filing its bankruptcy petition. NOV's frustration is also attributable to the fact that the individual defendants have broadly asserted their Fifth Amendment rights to remain silent and not respond to discovery because they have been informed that the United States Attorney's Office is investigating the matter. It is noted that the criminal investigation was initiated at NOV's request.

to $10 million. *See* Exhibit A to NOV's Position Statement Regarding Stay of Action [Doc. # 107] ("NOV's Statement").[6]

Several days before Mud King filed bankruptcy, the company amended its corporate bylaws to retroactively indemnify its employees. *See* Exhibit B to NOV's Position Statement Regarding Stay of Action [Doc. # 107]. Mud King thereby increased its own potential liabilities. NOV states that it will challenge Mud King's petition as a bad faith filing in the bankruptcy proceeding.

NOV has asserted numerous claims: misappropriation of trade Secrets (asserted against all Defendants); conversion (asserted against all Defendants); computer fraud and abuse (asserted against Mud King, Brassington, and Rubiano); theft under Chapter 134 of the Texas Civil Practice and Remedies Code (asserted against all Defendants); conspiracy to misappropriate trade secrets, convert NOV's property, and to commit theft under Chapter 134 of the Texas Civil Practice and Remedies Code (asserted against the Mud King Defendants and Dezhou); conspiracy to misappropriate trade secrets, convert NOV's property, and to commit theft under Chapter 134 of the Texas Civil Practice and Remedies Code (asserted against the Mud King Defendants, Oilman and Wellhead); conspiracy to misappropriate trade secrets,

---

[6] Other than the contingent liability arising from the dispute with NOV, Mud King has approximately $3.3 million in liabilities. *See* Schedules D, E, & F of Mud King Chapter 11 Bankruptcy, No. 12-32101-H5-11 [Doc. # 18, at 42-51].

convert NOV's property, to commit theft under Chapter 134 of the Texas Civil Practice and Remedies Code, and to breach Liliana Arredondo's fiduciary duties (asserted against the Mud King Defendants vis-à-vis Liliana Arredondo); aiding and abetting (asserted against the Mud King Defendants vis-à-vis Liliana Arredondo); unjust enrichment (asserted against all Defendants); conspiracy to misappropriate trade secrets, convert NOV's property, and to commit theft under Chapter 134 of the Texas Civil Practice and Remedies Code (asserted against the Mud King Defendants and SMC Defendants); and breach of contract (asserted against SMC).

## II.   LEGAL STANDARDS

***Extension of § 362 Stays.***  Section 362(a)(1) provides for an automatic stay of any judicial "proceeding against the debtor."  11 U.S.C. § 362(a)(1). "Section 362(a)(3) provides that the filing of a petition 'operates as a[n] [automatic stay] applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate.'"  *See Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1148 (5th Cir. 1987) (quoting 11 U.S.C. § 362(a)(3)); *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 722 (S. D. Tex. 2010) (Rosenthal, J.).

An automatic stay under § 362 typically does not apply to actions against a non-debtor.  *See In re TXNB Internal Case*, 483 F.3d 292, 301 (5th Cir. 2007); *Beran*, 747 F. Supp. 2d at 722.  However, a § 362 stay may apply to an action against non-debtor

defendants under limited circumstances regarding the non-debtors' relationship to the debtor. *See Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003). For instance, "a bankruptcy court may invoke § 362 to stay proceedings against non-bankrupt codefendants where 'there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Reliant Energy Servs.*, 349 F.3d at 816 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). Moreover, the § 362 stay "should extend to nonbankrupt codefendants only when there is a formal or contractual relationship between the debtor and non-debtors such that a judgment against one would in effect be a judgment against the other." *Beran*, 747 F. Supp. 2d at 723 (citing *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001); *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 717 (5th Cir. 1985); and *Reliant Energy Servs.*, 349 F.3d at 825). The "presence of identical allegations against the debtor and non-debtor defendants are an insufficient ground to extend the stay to the nondebtors." *Id.* at 724. "There must be an actual, as opposed to an alleged or potential identity of interests, such that a judgment against the nonbankrupt parties would in fact be a judgment against the bankrupt party." *Id.*

The burden to show that the stay is applicable to a non-debtor is on the party invoking the stay. *See Beran*, 747 F. Supp. 2d at 722-23 (citing 2 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE § 43:4 (3d ed. Supp. 2010) (noting that in bankruptcy court proceedings, "the party seeking to extend the stay will bear the burden to show that 'unusual circumstances' exist warranting such an extension of the stay to a nondebtor")); *see also Garlock*, 278 F.3d at 436 (holding that the defendant had "no interest to establish such an identity [of interests] with [the] debtor").

***Discretionary Stays.*** District courts may also exercise their discretion to stay a proceeding against non-bankrupt co-defendants "in the interests of justice and in control of their dockets." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983); *Beran,* 747 F. Supp. 2d at 723 (citing *Wedgeworth*, 706 F.2d at 545; *Gulf Coast Hotel–Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, No. 1:08CV1430–HSO–JMR, 2010 WL 972248, at *3 (S.D. Miss. Mar. 12, 2010) (finding that a district court may issue a discretionary stay even when a § 362 is inappropriate); *Fidelity & Deposit Co. of Md. v. Tri-Lam Co.*, Civil Action No. SA-06-CA-207-XR, 2007 WL 1091311, at *1 (W.D. Tex. Apr. 9, 2007) ("The district court may also grant a discretionary stay of the action against non-bankrupt co-defendants; however, this discretion is limited.")). "Proper use of this authority 'calls for the exercise of

judgment, which must weigh competing interests and maintain an even balance.'" *Wedgeworth*, 706 F.2d at 545 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). "A stay can be justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay can be framed to contain reasonable limits on its duration." *GATX*, 768 F.2d at 716 (citing *Wedgeworth*, 706 F.2d at 545).

### III.   DISCUSSION

#### A.   Mud King and Individual Mud King Defendants

##### 1.   Parties' Contentions

Defendant Mud King contends that the NOV litigation should be stayed as to it as well as the Individual Mud King Defendants, who are officers, directors and employees of Mud King, by virtue of § 362(a)(1). The basis for this request is Mud King's amendment of its corporate Bylaws on April 1, 2013, four days before the corporation filed bankruptcy, to require the corporation to "indemnify a Director, officer, committee member, employee or agent of the Corporation who was, is, or may be named defendant or respondent in any proceeding as a result of his or her actions

or omissions within the scope of his or her official capacity in the Corporation."[7] This indemnification applies "only if he or she acted in good faith and reasonably believed that the conduct was in the Corporation's best interests." *Id.*[8] Mud King points out that, if indemnification is appropriate, the indemnity covers judgments, penalties, taxes, fines, settlements, and reasonable expenses (including attorneys' fees) actually incurred in connection with the proceeding.[9] The Amended Bylaws also provide that "[b]efore the final disposition of a proceeding, the Corporation may pay

---

[7] Amended Bylaws of Mud King Products, Inc., dated Apr. 1, 2013 ("Amended Bylaws"), Art. 7.7 [Exh. A to Doc. # 102], at 1.

[8] The Amended Bylaws also provide:

> In a case of a criminal proceeding, the person may be indemnified only if he or she had no reasonable cause to believe that the conduct was unlawful. The Corporation shall not indemnify a person who is found liable to the Corporation or is found liable to another on the basis of gross negligence or improperly receiving a personal benefit. A person is conclusively considered to have been found liable in relation to any claim, issue, or matter if the person has been adjudges liable by a court of competent jurisdiction and all appeals have been exhausted.

Amended Bylaws, Art. 7.7 [Exh. A to Doc. # 102, at 1]. Also, the "termination of a proceeding by judgment, order, settlement, conviction, or on a plea of nolo contendere or its equivalent does not necessarily preclude indemnification by the Corporation." *Id.*, Art. VII, Sec. 7.7.1 [Exh. A to Doc. # 102, at 2].

[9] *Id.*, Art. VII, Sec. 7.7.5 [Exh. A to Doc. # 102, at 2]. Indeed, the "Corporation shall pay or reimburse expenses incurred by a Director, officer, committee member, employee, or agent of the corporation in connection with the person's appearance as a witness or other participating in a proceeding involving or affecting the Corporation when the person is not a named defendant or respondent in the proceeding." *Id.*, Sec. 7.7.2.

indemnification expenses permitted by these Bylaws and authorized by the Corporation."[10] Alternatively, Mud King seeks a stay of the entire litigation. Doc. # 102, at 2.

Mud King argues that, as to indemnified individuals, this case fits within *Garlock*, 278 F.3d at 426, because the claims against these individuals are the same as claims against the bankruptcy estate and indemnification expenses would be to the detriment of other creditors. Mud King also seeks a stay in the exercise of the Court's discretion.

The Individual Mud King Defendants Rubiano, Clayton, Cougot and Rodriguez join in this request for a stay of all proceedings against them pending resolution of the Mud King bankruptcy case, contending their interests are coextensive with Mud King's based on the right of indemnity established by the Amended Bylaws. *See* Doc. # 105.[11] Similarly, Defendant Brassington, a Mud King Director, seeks protection of

---

[10]     *Id.*, Art. VII, Sec. 7.7.4 [Exh. A to Doc. # 102, at 2]. There are procedures set forth in the Amended Bylaws for how the Corporation "must determine that indemnification is permissible, authorize the indemnification, and must determine that expenses to be reimbursed are reasonable." *Id.*, Art. VII, Sec. 7.7.6[Exh. A to Doc. # 102, at 2-3].

[11]     These Defendants also claim (incorrectly) that discovery directed to them has been stayed because of concerns surrounding the ongoing criminal investigation. *See* Doc. # 105, at 2.

the § 365 stay and/or a discretionary stay under the Court's inherent powers. *See* Doc. # 103.

Defendant Donald Humiston denies liability but, in any event, contends that discovery should be stayed as to him because, at trial, there would need to be findings of "contributory fault" vis à vis Mud King and because Mud King may have ratified the alleged intentional and fraudulent acts of its agents. *See* Doc. # 104.

NOV explains that it learned about the amendment to the Mud King Bylaws in Mud King's position statement. NOV contends that neither the § 365 stay nor any discretionary stay should be imposed preventing the prosecution of its claims against the Defendants. NOV argues that the bankruptcy itself is of "questionable legality." NOV complains that Mud King voluntarily incurred substantial and unnecessary obligations *four days before* the company filed for bankruptcy, an act that violates the business judgment rule and amounts to self-dealing on the part of Brassington, one of Mud King's directors. NOV argues the bankruptcy filing is indicative of "rampant mismanagement of Mud King" by the same individuals who allegedly are abusing their corporate offices to avoid due process in this Court," that Mud King "concocted a last-minute attempt to create such a relationship" by amending its bylaws, and that this is "not a clear-cut case of contractual indemnity." Doc. # 107, at 6. NOV seeks discovery of how this amendment came about, whether it passes the Business

Judgment Rule, and what benefit Mud King derives from obligating itself in this manner. *Id.* at 6-7 (citing *Beran*, 747 F. Supp. 2d at 723). NOV therefore asks the Court to reject the Individual Mud King Defendants' attempts to avail themselves of the extension of the § 365 stay.

Further, NOV argues that the fact that allegations that the Individual Defendants are associated with Mud King or that their conduct is alleged to be the same as Mud King's is insufficient to warrant a stay as to claims against the individuals. *Id.* at 7 (citing *Sanchez v. Freddie Records, Inc.*, No. H-10-2995, 2011 WL 3606808, at *2 (S.D. Tex. Aug. 10, 2011) (Rosenthal, J.); *Beran*, 747 F. Supp. 2d at 724). NOV also contends that the second potential ground to extend the stay—that the action against non-debtors involves property of the estate or would have a significant impact on the debtor's ability to reorganize—does not apply. *Id.* at 7 (citing *Carway v. Progressive Cnty. Mut. Ins. Co.*, 183 B.R. 769, 774-75 (S.D. Tex. 1995) (internal citation omitted)). NOV argues that this is not a case where a non-bankrupt codefendant may be protected by the automatic stay of § 362(a)(1) because extension of the stay would contribute to the debtor's efforts of rehabilitation. *Id.* at 7-8 (quoting *S.I. Acquisition*, 817 F.2d at 1147).

    **2.**    **Analysis**

The Court is cognizant of the fact that an automatic stay generally is not available to benefit co-defendants who are not related to a bankrupt debtor because "such an extension of the stay does not promote the underlying purposes of the automatic stay provision, *i.e.*, debtor/creditor protection," *S.I. Acquisition, Inc.*, 817 F.2d at 1147. Nevertheless, the Court concludes the circumstances here are atypical. The Bankruptcy Court presiding over the Mud King bankruptcy case must sort out the scope, applicability, and overall enforceability of the indemnification duties in the Amended Bylaws, at least in the first instance. *See Garlock*, 278 F.3d at 436 (citing *A.H. Robins Co.*, 788 F.3d at 999); *Fidelity & Deposit Co.*, 2007 WL 1091311, at *3 (citing *Garlock*, 278 F.3d at 436).

Because the scope of the § 365 stay is principally within a bankruptcy court's bailiwick, this Court exercises its authority at this stage only on a preliminary basis, in the interest of judicial efficiency and in conjunction with the Court's exercise of its discretion to impose a temporary stay in the interest of justice. The Court defers to the Bankruptcy Court to develop a full record, to determine the legal applicability and viability of the bankruptcy filing, and to evaluate the putative indemnity obligations in light of bankruptcy principles and other law.

Specifically, at this preliminary stage of the inquiry, this Court extends the § 365 stay to the Individual Mud King Defendants Brassington, Rubiano, Clayton,

Cougot and Rodriguez in order to preserve the sanctity of the bankruptcy estate, to maintain the *status quo*, and to avoid potential interference with the automatic stay as to Debtor Mud King. The automatic stay to preserve the bankruptcy estate's assets is a seminal right of bankruptcy and is crucial here, while the Debtor's indemnification obligations are clarified.[12]

The extension of the § 365 stay is temporary but warranted under the applicable law. The Individual Mud King Defendants appear to have been the likely intended beneficiaries of Mud King's indemnity obligations by virtue of the Amended Bylaws.[13] If the indemnity is enforceable and applicable, there is an "actual" identity of interests between the indemnified Individual Mud King Defendant and Debtor Mud King itself. On the present, albeit preliminary, record, this Court finds that the Amended Bylaws may create potential corporate indemnity obligations to one or more of the Individual Mud King Defendants by virtue of a formal indemnity relationship. The Amended Bylaws, taken at face value, are indistinguishable from a contractual

---

[12]   As noted, this ruling is without prejudice to the Bankruptcy Court's full investigation into the circumstances, propriety and legal basis (or lack thereof) of Debtor Mud King's April 1, 2013 amendment to its Bylaws and without prejudice to the Bankruptcy Court's independent decision as to the proper scope of the stay, as well as that Court's assessment of whether the bankruptcy filing is proper.

[13]   It is recognized that Mud King's indemnification obligations are contingent liabilities and arise only if it is determined that an Individual Mud King Defendant is entitled to the indemnity after evaluation of the specific facts regarding that individual.

indemnity.  *Compare*  Amended Bylaws, Art. 7.7 [Exh. A to Doc. # 102], at 1-3, *with Arnold*, 278 F.3d at 436 (rejecting argument that non-bankrupt asbestos co-defendant facing the same allegations as bankruptcy co-defendant was entitled to a § 365 stay); *GATX*, 768 F.2d at 717 (declining to extend the § 365 stay to non-debtor guarantors after one guarantor declared bankruptcy; the guarantors had independent contractual guaranty obligations); *Reliant Energy Servs*., 349 F.3d at 825 (declining to extend the § 365 stay to a non-debtor corporate affiliate facing similar allegations of breaches of contract).  Again, this Court does not reach the substantive issues of validity, applicability or enforceability of those indemnities.

The Court, alternatively, exercises its limited discretion "in the interests of justice and in control of [its] docket[]" under the Fifth Circuit's teachings in *Wedgeworth* to grant the Individual Mud King Defendants' request for a stay at this time, to allow for the Bankruptcy Court to conduct a fulsome investigation of the facts and the law as to the indemnities purportedly created by the Amended Bylaws.  *See Wedgeworth*, 706 F.2d at 545-46.

### B. Defendants Humiston, SMC and Murray

The Court reaches a different conclusion as to Defendants Humiston, SMC and Murray.  These Defendants have not met their substantial burden to show "an identity between the debtor and the third-party defendant that the debtor may be said to be the

real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Reliant Energy Servs.*, 349 F.3d at 825 (quoting *A.H. Robins Co.*, 788 F.2d at 999). Moreover, these Defendants have not shown any formal or contractual relationship between Mud King and themselves "such that a judgment against one would in effect be a judgment against the other." *Beran*, 747 F. Supp. 2d at 723 (citing *Garlock*, 278 F.3d at 436; *GATX*, 768 F.2d at 717; and *Reliant Energy Servs.*, 349 F.3d at 825). While there are many allegations against Humiston, SMC and Murray that are identical to those against Debtor Mud King and its employees or officers, this situation is insufficient basis to extend the stay to these non-Mud King Defendants. There simply is not an actual identity of interests. Indeed, Humiston has made it clear in conferences in this case that he is adverse to the Mud King Defendants. SMC and Murray are in a unique posture also because they do not appear to be aligned with the Mud King Defendants in many respects and are named by NOV in a separate count for breach of contract. These Defendants have not established that a judgment against them would in fact be a judgment against Mud King, the bankrupt party.

The Court also declines the invitation to issue a blanket discretionary stay regarding Humiston, SMC and Murray. The Court, however, will stage discovery in this case to permit NOV to move forward against these Defendants to the extent that

the discovery does not impair the interests of the Debtor or Mud King Defendants.[14] The parties are invited to obtain clarification promptly from the Bankruptcy Court regarding the appropriate scope of the § 365 stay as to Debtor Mud King (and, as noted above, the Individual Mud King Defendants) and their participation in the continuing litigation before this Court. It is unclear to the undersigned whether Debtor Mud King and the Individual Mud King Defendants currently are permitted under § 365 to participate in the litigation to some extent and whether an order partially lifting the § 365 stay to permit the Mud King Defendants to participate in this discovery would be warranted.[15] Finally, the Court will revisit the issue of a discretionary stay as to Humiston, SMC and Murray as needed.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the automatic stay pursuant to 11 U.S.C. § 365(a)(1) that covers Defendant and Debtor Mud King Products, Inc., is temporarily extended to Defendants Brassington, Rubiano, Clayton, Cougot and Rodriguez pending the

---

[14]  It appears that discovery of the non-Mud King Defendants should be able to proceed without adversely affecting the interests of the Mud King Defendants. These issues will need to be fleshed out as the litigation proceeds.

[15]  It is noted that, given Plaintiff NOV's articulated primary goal of information gathering to prevent future misuse of improperly obtained drawings [Doc. # 107, at 2] and its access to a full copy of the data from all of Mud King and its pertinent employees' computers, the staging of discovery should not harm Plaintiff.

Bankruptcy Court's determination of the legal viability of the indemnity obligations of Debtor Mud King to these individuals. The Court also exercises its discretion to stay the pending proceedings to permit the inquiries noted above. It is further

**ORDERED** that automatic stay pursuant to 11 U.S.C. § 365(a)(1) is not extended to Defendants Humiston, SMC and Murray. The Court declines to exercise its discretion to stay this action as to these Defendants, and orders the parties to stage discovery to first focus on NOV's claims against these Defendants, while the scope of the § 365 stay is clarified regarding the Debtor and Individual Mud King Defendants. It is further

**ORDERED** that there is no stay of this civil case as to the Manufacturing Defendants and any other named Defendants who have not appeared.

SIGNED at Houston, Texas, this 9th day of May, 2013.

_____
Nancy F. Atlas
United States District Judge